IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FELICIA CHAVANNE,<br><br>Plaintiff,<br><br>v.<br><br>SECOND LOOK, INC., BARRY LEFEVER, and ERIE INSURANCE,<br><br>Defendants. | CIVIL ACTION<br>NO. 21-2266 |
| FELICIA CHAVANNE,<br><br>Plaintiff,<br><br>v.<br><br>ERIE INSURANCE, SECOND LOOK, INC., and BARRY LEFEVER,<br><br>Defendants. | CIVIL ACTION<br>NO. 21-2448 |

**MEMORANDUM**

**SCHMEHL, J.** */s/JLS*                                                    **MARCH 28, 2022**

Defendants, Erie Insurance and Second Look, Inc., move for judgment on the

pleadings arguing, as a matter of law, that an insurance subrogation claim is not a "debt"

under the FDCPA or FCEUA and does not arise out of a transaction for goods used for

household or personal purposes under the UTPCL. For the reasons that follow, Defendants'

motions are granted and these matters are dismissed.

I.      **STATEMENT OF THE FACTS**

Plaintiff's cause of action was originally filed in magisterial court, where Plaintiff obtained default judgments against both Erie and Second Look. (Compl., Exs E and F). Erie and Second Look each separately appealed the default judgments to the Lancaster County Court of Common Pleas. (See Omnibus Notice of Removal at ¶¶ 8-10). Plaintiff then filed two identical complaints under two separate Lancaster County docket numbers, with each Complaint also adding a third defendant who had not been named in the magisterial action, Lefever, an Erie insured and Plaintiff's landlord. (*Id*. at ¶¶ 11-12). Second Look filed a Notice of Removal under Docket No. 21-2266 on May 18, 2021. On May 28, 2021, Erie and Second Look then filed an Omnibus Notice of Removal/Amended Notice of Removal under both Docket Nos. 21-2266 and 21-2448. On August 19, 2021, after Defendants had answered both complaints, Erie and Second Look filed a Motion for Judgment on the Pleadings under Rule 12(c) in both cases.

Plaintiff's claims arise out of alleged violations stemming from collection letters sent by Erie and Second Look seeking to collect on a subrogation claim related to a fire at the property where Plaintiff lived, owned by Lefever. The fire occurred at the property on May 1, 2019, causing damage. (Compl., ¶¶ 11-13). On February 11, 2020, Erie sent a letter to Plaintiff advising that Erie had settled the claim for damage to its insured's (Lefever) property; that Erie had the right of recovery under the terms of its policy; and requesting that Plaintiff provide her insurance information, or, if uninsured, to contact an Erie Subrogation Specialist. (Compl. ¶¶ 18-20, Ex. B). Subsequently, on April 10, 2020, after Plaintiff had not responded to Erie, Second Look sent Plaintiff a letter advising that its client Erie had "subrogation rights" and that it was expected that Plaintiff – as the

liable party – would pay for the damages. (Compl., ¶¶ 29-32, Ex. C). This letter further asked Plaintiff to provide her insurance coverage information, or that if Plaintiff did not have insurance coverage to contact a "Subrogation Representative" to discuss available payment options. (Compl., ¶ 32, Ex. C).

Plaintiff obtained counsel, and on May 13, 2020, Plaintiff's counsel wrote to Erie and Second Look advising that all future communications should be with counsel and advising of purported "unsavory facts" to suggest that Plaintiff was not liable for the subject fire. (Compl., Ex. D).

## II.   STANDARD OF REVIEW

Motions for judgment on the pleadings under Rule 12(c) are reviewed under the same standard as motions to dismiss under Rule 12(b)(6). *Sykes v. Glaxo-SmithKline*, 484 F.Supp.2d 289, 296 (E.D. Pa. 2007) (citing *Piskanin v. Hammer*, 2005 WL 3071760, at *3 (E.D. Pa. Nov. 14, 2005)). "The only notable difference between these two standards is that the court in a motion on the pleadings reviews not only the complaint but also the answer and written instruments attached to the pleadings." *Phillips v. Transunion, LLC*, 2012 WL 1439088, at *3 (E.D. Pa. April 25, 2012) (quoting *Sprague v. Neil*, 2007 WL 3085604, at *2 (M.D. Pa. Oct. 19, 2007)). But our Court of Appeals has consistently stated "that the distinction between the two standards is 'merely semantic.'" *Sprague v. Neil*, 2007 WL 3085604, at *2 (M.D. Pa. Oct. 19, 2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Burtch v. Millberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011) (citing *Iqbal*, 556 U.S. at 678). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679); *see also Burtch*, 662 F.3d at 221; *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011); *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010). And so, the pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. *Phillips*, 2012 WL 1439088, at *4.

## ANALYSIS

### A. FDCPA

Plaintiff's Complaints contain claims under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA"), Fair Credit Extension Uniformity Act, 73 P.S. §

2270.4 ("FCEUA") and Pennsylvania's Unfair Trade Practices and Consumer Protection Law 73 P.S. §201-1 *et seq*. ("UTPCPL"). These claims arise out of the attempt to collect on a subrogation claim following a fire at the property in question, a home owned by Defendant Lefever and rented by Plaintiff. In filing the instant motions for judgment on the pleadings, Defendants argue that the subrogation claim is not the result of a consumer purchase, but rather flows from the liability of Plaintiff arising out of her alleged negligence in causing the fire. Defendants further argue that this obligation is not the type of claim protected by consumer protection statutes and Plaintiff's Complaints must be dismissed.

In response, Plaintiff argues that because she had entered into a lease with Lefever that governed each parties' responsibilities in the event of a fire, any alleged subrogation claim arising out of damages from a fire arise out of contract and not out of tort liability. According to Plaintiff, this type of contractual damages is considered a debt under the FDCPA, and her claims must survive.

The Fair Debt Collections Practices Act ("FDCPA") provides a remedy for consumers who have been subjected to abusive, deceptive, and unfair debt collection practices by debt collectors. 15 U.S.C. § 1692. Consumers who are aggrieved by such practices may recover damages and attorney's fees and costs. 15 U.S.C. § 1692k(a). Debt collectors are prohibited from using "any false, deceptive, or misleading representation or means in connection with the collection of a debt." 15 U.S.C. § 1692(e). Therefore, a threshold requirement for the FDCPA to apply is that the prohibited practices are used in an attempt to collect a "debt."

The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or

services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). The FDCPA does not define the nature of the "transaction" which may give rise to such a debt. In the instant case, Defendants argue that Plaintiff cannot establish the existence of a debt and, therefore, her FDCPA claim must fail.

The caselaw on this issue has evolved slowly over the years. First, the Third Circuit held that the type of transaction giving rise to a "debt" under the FDCPA is a "transaction in which a consumer is offered or extended the right to acquire 'money, property, insurance or services' which are 'primarily for household purposes…'" *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1168-69 (3d Cir. 1987). Over twenty-five years later, the Third Circuit held that the "FDCPA applies only to debts arising out of a 'transaction,' which encompasses "consensual or contractual arrangements, not damage obligations." *Gross v. Maitlin*, 519 Fed. App'x 749, 751 (3d Cir. 2013) (*quoting Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1371 (11th Cir. 1998)). Although *Gross* did not involve a subrogation claim, in reaching its decision, the Third Circuit relied on the *Hawthorne* case out of the Eleventh Circuit Court of Appeals, which was a subrogation. In *Hawthorne*, the plaintiff was involved in an accident allegedly resulting from her negligence. *Hawthorne*, 140 F.3d at 1369. Liberty Mutual, the insurer of the other party to the accident, paid its insured's claim and then assigned its subrogation rights to Mac Adjustment, who sent the plaintiff a letter requesting payment of the subrogation claim. *Id*. The District Court granted the defendant's motion to dismiss and the Eleventh Circuit affirmed, stating:

> By the plain terms of the statute, not all obligations to pay are considered "debts" subject to the FDCPA. Rather, the FDCPA may be triggered only when an obligation to pay arises out of a specified "transaction." Although the statute does not define the term "transaction," we do not find it

ambiguous. A fundamental canon of statutory construction directs us to interpret words according to their ordinary meaning. The ordinary meaning of "transaction" necessarily implies some type of business dealing between parties. In other words, when we speak of "transactions," we refer to consensual or contractual arrangements, not damage obligations thrust upon one as a result of no more than her own negligence.

*Hawthorne,* 140 F.3d at 1369. (internal citation omitted). The Court further stated:

Because Hawthorne's alleged obligation to pay Mac Adjustment for damages arising out of an accident does not arise out of any consensual or business dealing, plainly it does not constitute a "transaction" under the FDCPA. Moreover, the fact that Mac Adjustment may have entered into a contract with the insurer for subrogation rights does not change the fact that no contract, business, or consensual arrangement between Hawthorne and the damaged party, its insurer, or Mac Adjustment exists. Consequently, the FDCPA does not apply because this is not a transaction.

*Id*. Lastly, the Court further explained as follows:

Quite simply, Hawthorne's alleged obligation to Mac Adjustment does not arise out of a consumer transaction; it arises from a tort. In conducting herself in an allegedly negligent manner that precipitated an accident, Hawthorne engaged in no consumer transaction. She neither purchased nor used goods or services. Rather, Hawthorne finds herself indebted to Mac Adjustment because she allegedly failed to conduct herself with the reasonable care that society demands of all of us, and she cannot somehow transform this payment obligation arising out of an accident into a consumer transaction.

*Id.* Similarly, in the case of *Kazmi v. CCS Commercial, LLC*, 2015 WL 4392836 (D.N.J. July 16, 2015), Progressive Insurance hired CCS to collect from the plaintiff on a subrogation claim related to a motor vehicle accident, and the Court found that the subrogation claim at issue did not "constitute a debt under the FDCPA." *Id*. Although neither *Hawthorne* nor *Kazmi* are binding on this Court, they are instructive and lead to the conclusion that a subrogation claim such as the one at issue in this case is not a transaction under the FDCPA which constitutes a debt.

Plaintiff attempts to avoid this conclusion by arguing that the obligation at issue (damages resulting from Plaintiff's alleged negligence in causing a fire) arises from contractual damages as opposed to arising from tort damages. In support of this argument, Plaintiff states that a line of cases has developed "within and out of the Third Circuit . . . allowing FDCPA claims to proceed when based on subrogation claims that arise out of contract obligations, meeting the definition of debt." ECF No. 18, p. 7. She then proceeds to discuss at great length numerous cases that allegedly support Plaintiff's argument that a subrogation claim can fall under the FDCPA, but in reality, are factually distinguishable. These cases do not rebut Defendant's argument that the subrogation claim **at issue** does not arise out of a consumer purchase, as it "flows directly from the alleged tort liability of Plaintiff arising out of her negligence in causing the fire at the Property." ECF No. 20, p. 3. These cases may have applied to this matter if Defendants were attempting to collect a subrogation claim related to a contract entered into by Plaintiff and Defendants, but that is not the situation we are faced with in this matter.

The only case cited by Plaintiff that is factually relevant to this matter is *Yelin v. Swartz*, 790 F.Supp.2d 333 (E.D. Pa., 2011). This case involved a plaintiff who rented a car from Econo Car Rental ("ECR") and was involved in an accident, causing damage to the car. ECR demanded he pay for repairs to the vehicle, but plaintiff refused. Plaintiff received a letter from ECR demanding payment, then received two other letters from the defendant law firm attempting to collect payment for the damage on behalf of ECR. *Yelin*, 790 F.Supp.2d at 333. In *Yelin*, the District Court found that plaintiff's responsibility for the car arose from the rental car agreement and not from tort liability and therefore concluded that this was a transaction that met the FDCPA's definition of "debt." *Id*. at 335.

Although there are some factual similarities between the instant matter and *Yelin*, I am not

persuaded by Plaintiff's argument for two reasons. First, *Yelin* was decided before the Third

Circuit's decision in *Gross*, where it adopted *Hawthorne's* reasoning that "damages

obligations" could not be debts under the FDCPA. Accordingly, if it were decided today,

*Yelin* would most likely have a different outcome, as it would be bound by the *Gross*

decision.

Secondly, even if *Gross* would not change the outcome of *Yelin* if it were decided

today, *Yelin* is distinguishable from the instant set of facts. The *Yelin* plaintiff had a direct

contractual relationship with ECR, who contracted with Defendant Swartz to attempt to

collect payment from plaintiff. In our case, Plaintiff alleges a contractual relationship via

the lease she entered into with Lefever, her landlord. However, there is no contractual

relationship between Plaintiff and Erie and/or Second Look, the entities who actually

attempted to collect on the obligation. Any collection attempts by Erie or Second Look are

distinguishable from the collection attempts in *Yelin,* as neither Defendant in this case has

any contractual relationship whatsoever with Plaintiff.

Further, Plaintiff's legal duty not to start a fire exists independently of any

contractual obligations that she may have. Whether set intentionally or unintentionally, the

damages that flow from the fire are tort damages, not contract damages. The mere fact that

Plaintiff had a lease with Lefever does not change the fact that fire damages are tort and

not contract damages. Accordingly, the subrogation claim in this case is not a debt as

defined by the FDCPA and Plaintiff's FDCPA claim is dismissed with prejudice.

### B.  FCEUA

The FCEUA "is a state-law analogue to the FDCPA, and a violation of the FDCPA

is also a violation of the FCEUA." *Stone v. JPMorgan Chase Bank, N.A.*, 415 F. Supp. 3d

628, 635 (E.D. Pa. 2019) (quoting 73 P.S. § 2270.4(a)). In addition, the FCEUA prohibits

a creditor from using "false, deceptive or misleading representation or means in connection

with the collection of any debt, including the false representation of the character, amount

or legal status of any debt." 73 P.S. § 2270.4(b)(5) (emphasis added). With respect to the

definition of "Debt," the FCEUA provides, in relevant part:

> An actual or alleged past due obligation, claim, demand, note or other
> similar liability of a consumer to pay money, arising out of a single account
> as a result of a purchase, lease or loan of goods, services or real or personal
> property for personal, family or household purposes or as a result of a loan
> of money or extension of credit which is obtained primarily for personal,
> family or household purposes, provided, however, that money which is
> owed or alleged to be owed as a result of a loan secured by a purchase
> money mortgage on real estate shall not be included within the definition of
> debt. The term also includes any amount owed as a tax to any political
> subdivision of this Commonwealth. Tax includes an assessment, any
> interest, penalty, fee or other amount permitted by law to be collected.

The plain language of the statute contemplates purchases, leases, extensions of credit,

payments for services – not subrogation claims arising from alleged tort liability. Erie and

Second Look never sought to collect on a "Debt" and therefore Plaintiff's FCEUA claims

may not proceed as a matter of law. *See Dixon v. Golden-Masano-Bradley, Law Firm*, 228

F. App'x 142 (3d Cir. 2007) (affirming trial court's dismissal of plaintiff's FDCPA,

FCEUA and UTPCPL claims where the obligation at issue did not qualify as a "Debt" or

"personal or household" transaction under the statutes). Therefore, Plaintiff's FCEUA

claim must also be dismissed.

### C.  UTPCPL

"The Commonwealth of Pennsylvania enacted the UTPCPL in order "'to even the

bargaining power between consumers and sellers in commercial transactions.'" *Corsale v. Sperian Energy Corp.*, 374 F. Supp. 3d 445, 459 (W.D. Pa. 2019) (quoting *Commonwealth v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1023 (Pa. 2018)). In order to state a UTPCPL claim, Plaintiff must prove that: "1) the defendant was engaged in unfair methods of competition and unfair or deceptive acts or practices, and 2) the transaction between plaintiff and defendant constituted 'trade or commerce' within the meaning of the UTPCPL." *Emondi v. T & G Car Sales, LLC*, 2020 WL 686184, at *6 (Pa. Super. Feb. 11, 2020) (citations omitted); see also 73 P.S. § 201-3. "The plaintiff must also establish: 1) that he or she is a purchaser or lessee; 2) that the transaction is dealing with "goods or services"; 3) that the good or service was primarily for personal, family, or household purposes; and 4) that he or she suffered damages arising from the purchase or lease of goods or services." *Emondi*, 2020 WL 686184, at *6 (citations omitted).

"A plaintiff seeking to recover under section 201-9.2 'must not only have suffered an ascertainable loss as the result of an 'unfair or deceptive act,' but also must be a 'person,' **who made a 'purchase,' 'primarily for personal, family, or household purposes**.'" *Balderston v. Medtronic Sofamor Danek, Inc.*, 152 F.Supp.2d 772, 776 (E.D. Pa. June 11, 2001) (quoting *Valley Forge Towers South Condominium v. Ron-Ike Foam Insulators, Inc.*, 574 A.2d 641, 645 (1990) (emphasis in original)). The UTPCPL "contemplates as a protected class only those who purchase goods or services, not those who may receive a benefit from the purchase." *Car Sense, Inc. v. American Special Risk, LLC*, 56 F.Supp.3d 686 (E.D. Pa. 2014) (quoting *Gemini Physical Therapy and Rehabilitation, Inc. v. State Farm Mut. Ins. Co.,* 40 F.3d 63, 65 (3d Cir. 1994)).

In the instant matter, a subrogation claim based upon Plaintiff's negligence is clearly not a transaction dealing with "goods and services" that are primarily for "personal or household purposes." Plaintiff's claim that she "leased the Property for primarily family and household purposes, to live with her family," (Compl, ¶ 81) is insufficient to allow her UTPCPL claim to proceed. The subrogation claim in question does not involve goods and services, nor does it arise from Plaintiff's lease of the property. Rather, the obligation flows from Plaintiff's alleged negligence in causing a fire, and this claim must also be dismissed[1].

### III.    CONCLUSION

For all of the foregoing reasons, Defendants' Motion for Judgment on the Pleadings is granted, and Plaintiff's Complaint is dismissed.

---

[1] Plaintiff's Complaint also includes a claim for vicarious liability against Erie for acts of Second Look, its agent. However, as there is no underlying liability on the part of Second Look in this matter, it follows that Erie cannot be vicariously liable.

12